**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **26-CR-440** |
| **JERMAINE SINGLETON** | **:** | |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

Defendant Jermaine Singleton, a federally convicted drug trafficker who continued buying and distributing multiple kilograms of cocaine every month while on supervised release, now appears in Court having been indicted for his second major federal drug trafficking offense. As detailed in the indictment, the defendant and his co-conspirators were responsible for distributing millions of dollars' worth of cocaine every month, all of which they sourced directly from a Mexican cartel. The organization was incredibly security conscious, using numerous phones and encrypted communications apps, as well as FaceTime and other video applications to avoid interception and detection. Meetings occurred in secret, in vehicles, or in specifically chosen locations designed to thwart surveillance.

The defendant was a trusted member of this conspiracy who distributed large quantities of cocaine throughout the course of the conspiracy. Later, when the cartel was struggling to locate sufficient trustworthy drivers to transport cocaine, the organization recruited the defendant to drive tractor trailer loads of cocaine from the Mexican border to Philadelphia.

The organization the defendant joined was also capable of violence, if necessary, and several co-defendants were arrested with firearms in their possession. Two conspirators, Shawn

Bell and William Mack[1] are convicted murderers, and co-defendant Renard Brown was implicated in a third murder.

Of course this is not the defendant's first brush with the law, nor his first brush with federal court. For his previous crimes, the defendant was rightly sentenced by the Hon. Stewart Dalzell to 205 months in federal prison for his senior role in a previous drug trafficking conspiracy. After his release, and while still under the Court's supervision for his prior drug trafficking conviction, defendant Singleton routinely purchased multiple kilograms of cocaine from co-defendant Gregory Jones, which he then resold to his own drug trafficking customers.

The defendant, his co-conspirators, and their organization possess the means to flee and hide from investigators, the ability to fight if necessary, and international connections which would make apprehension difficult, if not impossible. Because no condition or combination of conditions will reasonably assure the defendant's appearance as required and/or the safety of the community, the government moves pursuant to 18 U.S.C. §§ 3142(e) and (f) for a detention hearing and pretrial detention of the defendant.

## I. THE FACTS

In support of this motion, the government makes the following representations and proposed findings of fact:

### A. Probable Cause And The Evidence In This Case

1. There is probable cause to believe that the defendant violated Title 21, United States Code, Section 846, as charged in the indictment filed on September 16, 2026. As the defendant is charged with a controlled substance offense with a maximum term of

---

1 Mack is charged elsewhere at 25-CR-504.

imprisonment greater than ten years, there is a rebuttable presumption in favor of detention. 18 U.S.C. § 3142(e)(3)(A).

2. The evidence in this case is overwhelming. With permission from this Court, the Federal Bureau of Investigation ("FBI") installed covert audio and video recording devices within the passenger compartment of Gregory Jones' automobile. For nearly four months, the FBI watched and listened as Jones operated his multi-million-dollar drug empire, conspired with foreign drug traffickers, and met with his extensive network of drug trafficker customers, including the defendant. On the very first full day of interceptions, the FBI monitored a meeting between the defendant and Jones. During that meeting, the defendant paid Jones approximately $51,000 for three kilograms of cocaine.

Over the next several months, the FBI continued to monitor the defendant as he routinely purchased kilograms of cocaine from Jones and made large cash payments to Jones for previously supplied cocaine. As another example, on June 23, 2026, he once again met with Jones to obtain cocaine. During that meeting, Jones suggested the defendant speak with the Mexico-based cartel's logistics contact to discuss Singleton becoming a driver for the larger organization. The defendant was so well regarded by the organization that the cartel source offered to buy defendant Singleton a truck with a custom drug stash installed within it.[2] The government's evidence of the defendant's crimes is unimpeachable and he will be convicted.

2 Of course, recruitment into a Mexican cartel's drug trafficking network brings its own risks. In another call where co-defendant Jones spoke with the cartel members about defendant Singleton's potential involvement, the cartel logistics contact made clear that, should the defendant rob them or do anything funny, they would "cut his fucking head off." It is unclear whether this threat was ever conveyed to the defendant by Jones.

**B. Maximum Penalties**

The total maximum penalty defendant faces is life imprisonment, including a mandatory minimum 15 years' imprisonment. As this organization is responsible for distributing hundreds of kilograms, the government estimates the defendant's guidelines range is at least 210 – 262 months' imprisonment.

**C. Criminal Record**

The defendant's criminal history began at age 14. As noted above, the defendant was previously convicted of drug trafficking offenses here in the Eastern District of Pennsylvania. He was originally sentenced to serve 205 months' incarceration.

**D. Prior History of Failures to Appear and Abide by Court Supervision**

Nearly all of his prior convictions involved subsequent violations due to new arrests. The crimes detailed above all occurred, at least in part, while the defendant was under this Court's supervision.

**E. Lack Of Community Ties/Employment**

The defendant reports a lifetime in the Philadelphia area, but the government is unaware of any positive influences relevant to the Court's determination today.[3] One of the defendant's co-defendants in case 02-CR-172, Renard Brown, is also a co-defendant and co-conspirator in this matter. Whatever community ties the defendant maintains are either incapable of preventing his anti-social behavior or are criminal in nature.

3 At the time of this submission, the government had not yet received a report from the assigned pretrial services officer, despite several requests throughout the past week. The government respectfully requests an opportunity to supplement this filing with any new information obtained from the report.

The defendant's financial affidavit indicates only $36,000 in yearly income, yet he also reports owning two cars, including a brand new 2026 GMC Yukon, and a home. The defendant claims his home is worth $4,000, but according to publicly available Philadelphia property records, his disclosed residence, 1838 South Yewdall Street, appears to be owned by someone else. This residence was also the location of several drug transactions intercepted during the course of the wiretap.

The defendant's employment as a truck driver, while laudable in normal times, is a serious concern in this case. It was this very employment, and the CDL that the defendant obtained, which enabled his recruitment to drive for the cartel and Gregory Jones. Indeed, the defendant was present on June 26, 2026, shortly before Gregory Jones was arrested after accepting a multi-million dollar shipment of cocaine from a different cartel truck driver. Agents observed the defendant, seated in his tow truck, waving the cartel truck into a parking lot where Jones waited to accept the cocaine.

In any event, despite numerous inconsistencies and minimal monthly cash flow, the defendant nevertheless managed to pay Gregory Jones tens of thousands of dollars in cash on a weekly or monthly basis for massive quantities of cocaine. Certainly, this cash did not come from the defendant's tow truck business. Rather, the defendant is clearly concealing his true income from the Court's investigators and minimizing his available assets. Such concealment of assets should cause this Court great concern about his motivations and willingness to use those assets to flee.

## II. CONCLUSION

When all these factors are viewed in light of the substantial sentence defendant faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of the defendant as required and/or the safety of the community.

WHEREFORE, the government respectfully submits that its Motion for Defendant's Pretrial Detention should be granted.

Respectfully submitted,

David Metcalf
United States Attorney

*/s/ Christopher E. Parisi*
CHRISTOPHER E. PARISI
LAUREN E. STRAM
Assistant United States Attorneys

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **26-CR-440** |
| | : | |
| **JERMAINE SINGLETON** | | |

**PRETRIAL DETENTION ORDER**

AND NOW, this day of September, 2026, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

1. There is probable cause to believe that the defendant has violated 21 U.S.C. § 846.

2. The evidence in this case is strong. The defendant was intercepted by both audio- and video-recording devices for months as he bought kilograms of cocaine for distribution throughout Philadelphia.

3. The total maximum statutory penalty defendant faces is life imprisonment, including a mandatory term of 15 years. The estimated guidelines range for the offenses charged is 210 - 262 months imprisonment. Accordingly, the defendant has a substantial incentive to flee.

4. The defendant has a significant criminal history, including a federal drug trafficking conviction. This offense was committed while under the supervision of this Court's probation office. His close association with violent felons was also a violation of this Court's supervised release and poses a danger to the community.

5. The strength and nature of the case against the defendant, combined with the strong likelihood that the defendant will be incarcerated for a significant period of time, establishes the defendant's danger to the community and increases the high risk that the defendant will not appear as required by the Court.

6. As there is probable cause to believe that the defendant committed an offense punishable by 10 or more years in jail under the Controlled Substances Act, the Court must presume--subject to rebuttal by the defendant--that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of the defendant as required. The defendant has failed to rebut this presumption.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from

persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

____________________________________
HON. ELIZABETH L. TOPLIN
United States Magistrate Judge

CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention, and Proposed Order was served by electronic filing, on the following defense counsel:

Kate Cacciamani, Esq.

*/s/ Christopher E. Parisi*
CHRISTOPHER E. PARISI
Assistant United States Attorney

Date: September 28, 2026