**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff,*<br>v.<br>JERMAINE SINGLETON,<br>*Defendant.* | CRIMINAL ACTION<br>NO. 26-440-6 |

**Pappert, J.** **October 30, 2026**

## MEMORANDUM

Jermaine Singleton was indicted for conspiracy to distribute over 5 kilograms or more of cocaine in violation of 21 U.S.C. § 846. After a pretrial detention hearing, Magistrate Judge Toplin approved his release on various conditions, including home detention with electronic monitoring and a curfew. The Government appealed the decision, moving for revocation of pretrial release. The Court stayed Judge Toplin's order pending a decision on the Government's appeal. The Court held oral argument on October 28, 2026, and now grants the Government's motion.

I

Singleton has a lengthy criminal history and was most recently convicted in 2004 for his role in a large drug-trafficking organization. (Gov't's Mot. at 3, Dkt. No. 113.) He was sentenced and then resentenced twice, ultimately to 240 months incarceration and 4 years of supervised release. (*Id.* at 3–4; Def.'s Mot. at 5, Dkt. No. 132.) He was released from custody on May 10, 2022, and his supervised release ended on May 11, 2026. (Gov't's Mot. at 4; Def.'s Mot. at 5.)

While Singleton was still on supervised release, FBI agents were investigating his co-defendant, Gregory Jones, and had started receiving interceptions from bugs installed in Jones's vehicles on March 16, 2026. (Gov't's Mot. at 4.) On March 17, an FBI pole camera and a device in one of Jones's cars captured Singleton, on video and audio, engaging in a "three-kilogram purchase [of cocaine] from Jones for $51,000." (*Id.*) The FBI saw Singleton make similar large cocaine purchases from Jones over the next several months. (*Id.*)

Agents also allegedly observed Jones discussing the need for "vetted and trusted members of the organization" to drive shipments of cocaine from Mexico to Philadelphia. (*Id.*) Singleton, who has a commercial driver's license, allegedly agreed to be one of the drivers, though someone else ended up performing that task. (*Id.*; Hr'g Tr. 32:15–33:3.)

In September of 2026, a federal grand jury indicted Singleton and charged him with one count of conspiracy to distribute 5 kilograms or more of cocaine. (Indictment at 1; Dkt. No. 46.) The Pretrial Services Report recommended Singleton's release on a $50,000 unsecured bond with a number of conditions, and Judge Toplin approved his release, imposing additional conditions.[1] (Def.'s Mot. at 2; Gov't's Mot. at 5.) The

[1] The Pretrial Services Report was incomplete and inaccurate in several material respects. Among other things, it stated that Singleton did not have a passport, when in fact he did. Singleton corrected that mistake through his lawyer. It said Singleton had "one prior federal arrest and conviction" (the 2004 drug felony) but omitted that he had a lengthy state court criminal history stretching back 37 years with two juvenile adjudications and ten arrests and seven convictions for, among other things, theft, possession of a controlled substance and criminal conspiracy. The Report also said that Singleton had "recently served four years of supervision with U.S. Probation with no violations indicating he can comply with pretrial release." While this statement contained a kernel of truth—Singleton technically had "no violations"—the Report never mentioned that he committed much of the conduct for which he is now charged while on supervised release. Those alleged supervised release violations were not formally addressed because revealing them would have blown the FBI investigation's cover. And while the Report discussed that Singleton owns and operates a towing company, it did not reveal that Richard Brockington, who owns the other 50% of the entity,

Government requested a 24-hour stay and filed an appeal for revocation of release, (Dkt. No. 113), and the Court stayed Singleton's release pending review of the Government's appeal, (Order, Dkt. No. 118). The Court held oral argument on October 28, 2026. (Dkt. No. 136.)

II

The Bail Reform Act provides a rebuttable presumption in favor of pretrial detention when, as here, "the judicial officer finds that there is probable cause to believe that the person committed [] an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3). Singleton already has a prior federal conviction for conspiracy to distribute more than 5 kilograms of cocaine and more than 50 grams of cocaine base. *See United States v. Singleton*, No. 02-cr-172-22, Dkt. Nos. 181, 1220, 1413. He accordingly faces a mandatory minimum sentence of fifteen years' and a maximum of life imprisonment in this case. *See* 21 U.S.C. § 846; 21 U.S.C. § 841(b)(1)(A). There is probable cause to believe that Singleton violated 21 U.S.C. § 846 because of the grand

---

also has a lengthy criminal history, including felony convictions for firearm and drug offenses, and is currently a suspect in an active homicide investigation in Philadelphia. Moreover, Singleton's release conditions require him to live with his fiancée, Alaina Morgan, at 1838 South Yewdall Street in Philadelphia, with no firearms allowed on the premises. But Ms. Morgan bought a firearm two months after Singleton's release from prison, something she neglected to disclose to Judge Toplin at the detention hearing. When FBI agents learned that Ms. Morgan bought a gun, they went to the home the day after the hearing and Ms. Morgan acknowledged the gun was in an upstairs closet.

Immediately prior to oral argument, Pretrial Services sent the Court an updated memorandum doubling down on its recommendation to release Singleton. But later that afternoon, after learning of the Court's concerns with the Report's shortcomings (Hr'g Tr. 16:1–21:18), Pretrial Services sent the Court an Amended Report correcting many of the errors, now recommending Singleton's detention. (Email from Pretrial Services, to Chambers of Judge Pappert (Oct. 28, 2026, at 6:49 pm ET); *Amended Pretrial Services Report* (on file with the Court).) Pretrial Services' belated change of heart is not relevant to the Court's decision on the Government's motion, which the Court assesses under the Bail Reform Act's required factors.

jury's indictment and the facts proffered by the Government. *See United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986) (holding that an indictment is sufficient to support a finding of probable cause triggering the rebuttable presumption). As such, the Court must presume "that no condition or combination of conditions will reasonably assure [Singleton's] appearance as required and the safety of the community" if he were released. 18 U.S.C. § 3142(e).

Once this presumption arises, the burden shifts to Singleton to "produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) (per curiam). Section 3142(g) of the Bail Reform Act provides factors the Court must review to determine if Singleton has satisfied that burden:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) The weight of the evidence against the person;
>
> (3) The history and characteristics of the person, including-
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) The nature and seriousness of the danger to any person in the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

"The quantum of evidence required to rebut the presumption is not high. Rather, the defendant need only come forth with credible evidence conflicting the presumption." *United States v. Gibson*, 481 F. Supp. 2d 419, 422 (W.D. Pa. 2007); *see also Carbone*, 793 F.2d at 560. Even if a defendant rebuts the presumption of dangerousness or flight, however, the presumption does not disappear entirely but remains a factor to be considered among those weighed by the Court. *See, e.g., Carbone*, 793 F.2d at 560–61.

To order pretrial detention once the presumption has been rebutted, the Court must find by a preponderance of evidence that no conditions can reasonably assure the defendant's appearance at trial or by clear and convincing evidence that no combination of conditions will reasonably assure the safety of the community. *United States v. Perry*, 788 F.2d 100, 106 (3d Cir. 1986); *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). The Court reviews the factors and makes this determination *de novo*. *United States v. Delker*, 757 F.2d 1390, 1395 (3d Cir. 1985).

III

The first § 3142(g) factor, the nature and circumstances of the offense, weigh in favor of Singleton's detention. Congress considers drug crimes with a maximum penalty of more than ten years' imprisonment so serious that it has imposed an evidentiary burden on persons seeking pretrial release. *See United States v. Strong*, 775 F.2d 504, 507 (3d Cir. 1985). If Singleton is convicted of conspiracy to distribute over 5 kilograms or more of cocaine, he faces a mandatory minimum sentence of fifteen years' and a maximum of life imprisonment with an estimated Guidelines range of 210 to 262 months. *See* 21 U.S.C. § 846; 21 U.S.C. § 841(b)(1)(A). (Hr'g Tr. 9:5–8.)

Singleton is 52 years old and even a sentence within this estimated advisory range could mean that he may spend the rest of his life in jail—giving him tremendous incentive to flee. The serious nature of Singleton's charged offenses and his potential sentencing exposure strongly favor detention.

The weight of the evidence, the second factor, also works against Singleton. The Government represents that audio and video recordings for a four-month period show Singleton regularly meeting with Jones, with Singleton, in just one instance, giving Jones $51,000 in cash in exchange for 3 kilograms of cocaine. (Hr'g Tr. 7:7–8:15, 34:6–24; Gov't's Ex. A1, Dkt. No. 113-1.)

The third factor, Singleton's personal history and characteristics, also warrants his continued detention. Singleton admittedly has longstanding personal and family ties to Philadelphia and will live at his fiancée's South Yewdall Street home if he is released. (*Id.* at 26:2–3, 30:19–31:21.) But Ms. Morgan bought a gun, recovered by the FBI from a closet in the home the day after the detention hearing, just two months after her fiancé left prison and concealed that fact from the magistrate judge. (*Id.* at 919–20:14, 35:3–16.) Under Singleton's proposed release conditions there were to be no firearms on the premises. And this is the same address, according to the Government, where Singleton was seen during the investigation buying and storing bulk cocaine and meeting with Jones. (Gov't's Mot. at 7.)

Singleton's self-employment as a tow truck operator was revealed to be suspect once the Government looked under the truck's hood. Singleton's "50/50 partner" in the business is Robert Brockington, a man who, according to an NCIC report supplied by the Government, has gone by a number of aliases and has a lengthy criminal history

with countless arrests and numerous convictions, including for possession and manufacture of controlled substances, theft, robbery, conspiracy, assault and possession of unlicensed firearms. He is also currently under investigation for homicide. (*See* Hr'g Tr. 10:21–12:20, 33:24–34:1.) And while Singleton now pledges to "sever ties" with Brockington given this criminal history, (*id.* at 26:4–6), that would not mitigate the Court's concerns over his close associations with Brockington or answer what exactly Brockington is contributing to the towing business if he can be so easily discarded. Moreover, the towing company's address of incorporation is a vacant lot, (Gov't's Ex. A3, Dkt. No. 113-3), and the address Brockington provided in the company's paperwork does not exist in Philadelphia, (Hr'g Tr. 10:15–13:3). Singleton told Pretrial Services he earns $3,000 per month from the business, yet after being in jail for twenty years he is able to own a $90,000, 2026 GMC Yukon. (Hr'g Tr. 13:8–19.)

As for Singleton's criminal history, he was previously convicted in federal court of being a high-level distributor in a large drug trafficking organization, and "the concern about safety [is] given a broader construction than merely danger of harm involving physical violence" in light of Congress's "explicit equation of a drug offense with danger to the safety of the community." *United States v. Semler*, No. CR 17-120, 2021 WL 3857802, at *2 (E.D. Pa. Aug. 30, 2021) (quoting *Strong*, 775 F.2d at 506); *Strong*, 775 F.2d at 507. In addition, he has a lengthy state court criminal history with, *inter alia*, conspiracy, drug possession and theft convictions. (Hr'g Tr. 34:2–5; *Amended Pretrial Services Report* at 3–5.) And again, Singleton committed much of the conduct charged in the indictment, including the $51,000 payment for 3 kilograms of cocaine,

while on supervised release for his prior federal felony drug conviction. (*Id.* at 13:20–14:7.)

The fourth factor also favors Singleton's continued detention. Singleton is charged with conspiring to distribute large amounts of cocaine; conduct for which he was previously convicted. He poses a danger to the community because of the likelihood that he will resume trafficking illicit drugs if he is released. *See Perry*, 788 F. 2d at 111 (danger to the community arises from the likelihood that the defendant will, if released, commit one of the proscribed federal offenses); *cf. Strong*, 775 F.2d at 507 (noting that statutory language unequivocally establishes that Congress intended to equate trafficking drugs with a danger to the community).

Singleton cannot overcome the presumption in favor of his pretrial detention. Even if he had, the Government has shown by clear and convincing evidence that no conditions will reasonably assure the safety of the community if he is released.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.